**SOUTHERN RAILWAY COMPANY,**
Appellant,

v.

**Earl N. BRYAN, Appellee.**
No. 23782.

United States Court of Appeals
Fifth Circuit.

April 3, 1967.

John David Jones, Thomas B. Branch, III, Atlanta, Ga., Charles J. Bloch, Macon, Ga., Greene, Neely, Buckley & Derieux, Atlanta, Ga., for appellant.

Stanley P. Meyerson, Atlanta, Ga., Alfred D. Fears, Jackson, Ga., Hatcher, Meyerson, Oxford & Irvin, Atlanta, Ga., for appellee.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and BREWSTER, District Judge.

**BREWSTER, District Judge:**

The railroad is appealing from a judgment rendered in favor of one of its employees in an action for damages for personal injuries brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., alleging in separate counts a violation of the Boiler Inspection Act, 45 U.S.C.A. § 23, and common law negligence.

The overall question presented here is whether the issue of liability under the count predicated upon the alleged violation of the Boiler Inspection Act was settled as a matter of law. Each party claimed that it was so settled in his favor. The trial court agreed with the employee, and the count on negligence was withdrawn. The court instructed the jury that the railroad was liable as a matter of law, and submitted to them only the issue as to amount of damages. The railroad insists that it was entitled to judgment as a matter of law on such count, and, in the alternative, that there were issues of fact both as to violation and as to proximate cause that made the action taken by the court reversible error. All the controlling facts material to these questions here involved are undisputed.

On November 8, 1962, the locomotive and several cars of the railroad's passenger train, known as "The Southerner", were derailed and overturned in a collision at a crossing near Eastaboga, Alabama, while the train was enroute from Washington, D. C. to New Orleans. The locomotive came to rest on its side, roughly parallel to the tracks of the main line, but close enough to interfere with rail traffic thereon. It was gutted by fire to the extent that it was inoperative as a locomotive. Bryan, a carman, was a member of a crew that was sent to the scene to rerail the locomotive and cars so that they could be taken to the repair shops. The crew had two boom cars to lift the wrecked equipment back on the track. Cables from the boom cars were attached by means of a clevis to the lifting eye or metal bracket provided for that purpose on each end of the locomotive, so that the crane on one of

such cars would be lifting the front while that on the other was raising the back. When the locomotive was off the ground, the cranes could maneuver it into position to be lowered to the tracks on its wheels. The employee, in accordance with instructions, attached one of the cables to the lifting eye on the back end of the locomotive, and then went to the other side of one of the boom cars to keep watch on its wheels to make certain that they did not raise up and come off the tracks during the lifting operation. The lifting could be done either by picking up the cables or by raising up on the booms of the derricks. The latter method, called "booming", was the one used on the occasion here involved. The lifting eye on the rear broke while the locomotive was suspended in the air, with the result that the loosened cable backlashed and a piece of its attaching apparatus hit the employee across the back and injured him while he was down on his hands and knees watching the wheels of his boom car.

A careful consideration of the record has led us to the conclusion that we cannot agree with the railroad's contentions that it is not liable as a matter of law on the grounds that the locomotive was not in use on its line at the time of the injury, that it was exempt from liability during the movement of the locomotive from the point of disability to the nearest available point of repair, and that the lifting bracket was not a part or an appurtenance of the locomotive within the meaning of the Boiler Inspection Act. Where the hauling of a disabled or defective railroad vehicle is "in progress or in immediate contemplation", McCalmont v. Pennsylvania Company, 6 Cir., 283 F. 736, 739 (1922), the handling of it for that purpose is a part of its unitary journey from the point of discovery of disability to the repair shop. Texas & P. Ry. Co. v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1915), affirming, 5 Cir., 222 F. 221. The fact that the Boiler Inspection Act does not contain a reservation of remedial actions for personal in-

juries similar to the one in Section 13 of the Safety Appliance Act does not relieve the railroad from liability for injuries due to violations thereof during transportation of a locomotive from the point of discovery of a violation to the nearest place of repair. The reservation in Section 13 was made necessary because of a provision therein for exemption from civil penalties that has no counterpart in Section 23. Getting the locomotive back on the track in the event of derailment was an integral part of its use, and the metal eye designed to assist in that operation came within the broad language "all parts and appurtenances" of Section 23.

The trial court correctly instructed the jury that liability was established as a matter of law. Givens v. M. K. & T. R. Co., 5 Cir., 195 F.2d 225 (1952). Even if we were to agree with the railroad's argument that there was a fact issue as to the existence of a defect that caused the lifting bracket to break, there would still be no escape from the fact that the bracket did not comply with the requirement of the Boiler Inspection Act that all parts and appurtenances of locomotives be "safe to operate in the service to which same are put". The employee did not have to show the existence of a defect. His burden of establishing liability was discharged when it was proved that he suffered injuries as a proximate result of the failure of the lifting bracket to perform properly in an intended service for which it was being used. O'Donnell v. Elgin, J. & E. R. Co., 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187 (1949); Affolder v. N. Y. Ch. & St. L. R. Co., 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683 (1949); Givens v. M. K. & T. Ry. Co., supra. While the first two cases just cited involve violations of the Safety Appliance Act, the principle above announced by them applies with equal force to cases arising under the Boiler Inspection Act. All of the federal safety laws in Chapter 1, Title 45, U.S.C., are in *pari materia* and must be liberally construed in connection with the federal remedy provided in Chapter 2 of such title to carry out their remedial and humanitarian purposes. Urie v. Thompson, 337 U.S. 163, 189, 192, 69 S.Ct. 1018, 93 L.Ed. 1282, 1299, 1302. The undisputed facts established the required causal connection between the violation of the Boiler Inspection Act and the employee's injuries under the test laid down by Rogers v. Mo. Pac. R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), and later cases cited by this Court in Page v. St. L. S. W. Ry. Co., 5 Cir., 312 F.2d 84, 98 A.L.R.2d 639 (1963).

The judgment is affirmed.