**Jason D. MORGAN, Plaintiff/Appellant,**

v.

**UNION PACIFIC RAILROAD CO., Defendant/Respondent.**

**No. ED 97130.**

Missouri Court of Appeals, Eastern District, Division Three.

March 13, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 26, 2012.

Application for Transfer Denied July 3, 2012.

**220**

Jason D. Kander, Kenneth E. Barne, Kansas City, MO, Alan S. Mandel, St. Louis, MO, For Appellant.

Nicholas J. Lamb, Matthew H. Caraway, David A. Dick, St. Louis, MO, For Respondent.

SHERRI B. SULLIVAN, J.

*Introduction*

On May 9, 2008, while Jason D. Morgan (Appellant) was employed by Union Pacific Railroad (Respondent) as a trainee Brakeman, Appellant's manager Todd Foster (Foster), who was intoxicated and off-duty at the time, physically assaulted Appellant twice at a diner where Appellant and some co-workers were eating their lunch. Appellant appeals from the summary judgment the trial court entered in favor of Respondent on Appellant's negligence claims against Respondent for Foster's assaults. We affirm.

*Factual and Procedural Background*

Appellant began working for Respondent on February 4, 2008. During Appellant's training period, Respondent assigned him to the Paducah, Kentucky territory, an area which had two managers, Foster and Ricky Phillips (Phillips). On the evening of May 8, 2008, Respondent assigned Appellant, as trainee Brakeman, and a crew consisting of Brakeman William Tackett (Tackett), Conductor Jeff Mastrorocco (Mastrorocco) and Engineer Richard Vasquez (Vasquez), to operate a train in the Paducah area. Phillips was the manager on duty at the time.

On May 9, 2008, at approximately 1:15 a.m., Appellant and his crew rode together in a work van to "Trembles" diner for their mid-shift meal or "lunch." En route to lunch, Appellant heard Tackett and Mastrorocco talking on the phone with Foster, who was not on duty, telling him not to drive if he was intoxicated; that the crew would pick him up in the work van if he needed a ride; and he should leave the bar if he was going to get into a fight.

When they arrived at the diner, Foster was there, sitting alone at the counter, yelling, slurring his words and smelling of alcohol. It was clear to Appellant that Foster had been out at a bar drinking prior to arriving at the diner. The crew sat down at a table; Foster joined them. Appellant avers that Foster said he liked to fight when he was drinking, and that he had just come from a bar where he wanted to fight fourteen men. Foster asked the crew to go with him to the bar to fight the men. The crew declined. Appellant maintains that Foster then claimed he was a professional boxer, turned his attention on Appellant and told him he wanted to box him. Appellant stated he did not know how to box. Foster then stated that he could break Appellant's arm with a wrestling move called an "arm bar." Foster got up, circled the table to where Appellant was sitting, grabbed Appellant's left arm and twisted it behind Appellant's back holding it there for a few seconds. Foster then stopped and went back to his seat.

A few minutes later Foster left the diner with Tackett. Appellant and the rest of the crew stayed behind to finish their food and pay their bills. When Appellant finished his meal he paid his bill and exited the diner leaving Vasquez and Mastrorocco behind to finish their meals and pay.

Appellant testified that he thought Foster had completely left the diner premises until he saw him standing outside in the parking lot with Tackett. Appellant told Foster that he had hurt his arm, and asked him what he had done to it. He also warned Foster not to touch him again. Foster replied that he could show Appellant how to get out of the "arm bar." Appellant told Foster not to touch him. Foster grabbed Appellant's left arm anyway, and started pulling on it violently, until Appellant heard a "pop."

Four days later, on May 13, 2008, Respondent terminated Foster for the two aforementioned assaults he committed on Appellant.

On April 15, 2010, Appellant sued Respondent for negligence under the Federal Employers' Liability Act (FELA) for the injuries he sustained to his left arm and shoulder from Foster's assaults. After briefing and argument, the trial court granted Respondent's motion for summary judgment, based on lack of foreseeability and ability to have prevented the injury. This appeal follows.

### Point Relied On

In his point relied on, Appellant asserts the trial court erred in granting Respondent's motion for summary judgment because it overlooked genuine issues of material fact in that sufficient evidence existed for a jury to conclude that Respondent had knowledge of Appellant's unsafe working conditions making the harm to Appellant reasonably foreseeable and Respondent failed to take reasonably adequate measures to prevent that harm.

### Standard of Review

In considering appeals from summary judgments, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376

(Mo.banc 1993). Summary judgment is proper only when the moving party has demonstrated on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.* Our review is essentially de novo. *Id.* at 376. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The propriety of summary judgment is purely an issue of law. *Id.* As the trial court's judgment is founded on the record submitted and the law, we do not defer to the trial court's order granting summary judgment. *Id.*

### Application of Law

■ It is well established that FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal. *St. Louis S.W. Ry. v. Dickerson,* 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985); *Cameron v. Norfolk and Western Ry.,* 891 S.W.2d 495, 498 (Mo.App. E.D. 1994).

### Discussion

■ Appellant's cause of action is one for direct negligence under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51.1 (2006), which provides in pertinent part, "Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury resulting in whole or in part from the negligence of any officers, agents or employees of such carrier." A submissible case is made under FELA where the plaintiff shows that the employer had a duty to provide him with a reasonably safe place to work, that the employer breached its duty of care, that this lack of due care

played some part in causing plaintiff's injury and that his injury was reasonably foreseeable. *Euton v. Norfolk & Western Ry. Co.,* 936 S.W.2d 146, 150 (Mo.App. E.D. 1996).

■ Appellant contends that he was exposed to an unsafe working condition created by his superior, Foster, and that Respondent had knowledge of that condition. In support of this contention, Appellant asserts that Foster, in fact, *was* the unsafe working condition because he twice assaulted Appellant during Appellant's shift at work while Foster was intoxicated, and that Foster's knowledge of his own misconduct toward Appellant while Appellant was at work is sufficient to impute knowledge of the unsafe working condition onto Respondent.

Appellant maintains that even if Foster's own actions were not sufficient to impute knowledge onto Respondent of the unsafe condition he created, and thus the first assault on Appellant was not foreseeable, the evidence demonstrating the presence of Appellant's crew at the first assault is sufficient to impute onto Respondent knowledge of the unsafe condition and made the *second* assault entirely foreseeable and preventable.

We disagree. There is nothing in the record to show that Respondent had actual or constructive knowledge that Foster had propensities for violence prior to the date in question. Appellant attempts to show evidence of prior knowledge, albeit "prior" by a matter of minutes or perhaps an hour, through (1) Appellant's overheard snippets of the telephone conversation between Tackett, Mastrorocco and Foster en route to lunch to the effect that Foster should leave the bar if he thought he was going to be involved in a fight; (2) the crew's taking Appellant to the same restaurant where they knew the intoxicated and agitated Foster would be; (3) the crew's witness of Foster's vocalized desire at lunch to fight

the fourteen men at the bar and in general to fight while drinking; and (4) Foster's first physical assault on Appellant by twisting his arm at the diner table. Appellant maintains that all of this evidence taken together establishes sufficient foreseeability on the part of Respondent, imputed through its employees Tackett, Mastrorocco and Vasquez, to hold it liable for Appellant's injuries, or at least to create a question of fact for the jury.

■■■■ In this case, Appellant's petition was comprised of one count asserting direct negligence under FELA against Respondent. Under FELA, the negligence of a co-employee is considered the same as the negligence of the employer. *Mullahon v. Union Pac. R.R.*, 64 F.3d 1358, 1362 (9th Cir.1995). "Thus, a railroad 'must answer for an employee's negligence as well as for that of an officer or agent.'" *Cluck v. Union Pacific R. Co.*, 2011 WL 65891 *3 (Mo.App. W.D.2011), quoting *Boldt v. Pa. R.R.Co.*, 245 U.S. 441, 445, 38 S.Ct. 139, 62 L.Ed. 385 (1918). "'Well established precedent applies the common law principle that an employer may be vicariously liable for its employee's negligence ... committed within the course and scope of employment, that is, committed while furthering the employer's ... business.'" *Cluck*, 2011 WL 65891 at *3, quoting *Sobieski v. Ispat Island, Inc.*, 413 F.3d 628, 631–32 (7th Cir.2005). "Under FELA, employers are liable for the negligence of their employees only if it occurs within the scope of employment, and no liability attaches when an employee acts 'entirely upon his own impulse, for his own amusement, and for no purpose of or benefit to the defendant employer.'" *Cluck*, 2011 WL 65891 at *3, quoting *Copeland v. St. Louis–San Francisco Ry. Co.*, 291 F.2d 119, 120 (10th Cir.1961).

Respondent is not liable in this case under FELA 45 U.S.C. § 51.1 because there was no showing that Respondent should have foreseen the danger in order to have taken steps to prevent it. There were no prior incidents of violence with Foster in the record that would have put Respondent on notice of any danger he posed. Appellant acknowledged that he had met Foster one or two days prior to the incident, worked for hours with him and had no problems with him. Foster never threatened Appellant nor gave him any indication that he may be violent towards Appellant or anyone else.

Both incidents at issue occurred very quickly such that Appellant's co-employees who were present at the time could not reasonably have been expected to prevent them. Appellant himself admitted he was surprised by Foster's action, that it happened so fast he could not have avoided it. When Foster got up from the table to go around to Appellant, Appellant testified he thought he was getting up to pay his bill. Appellant did not feel threatened by Foster and did not expect Foster to physically assault him. Appellant testified that he "didn't think he was actually going to put his arms on me." Based on the foregoing, there clearly was not sufficient time to take appropriate steps to prevent these incidents from happening. They were not foreseeable.

■■■ Also, Foster's assaultive behavior was outside the scope of his employment and not in any furtherance of Respondent's business. Railroad employers routinely are held not liable for their employees' spontaneous acts of violence or horseplay resulting in harm due to lack of notice and because such acts are outside the scope of employment. See *Cluck*, 2011 WL 65891 at *7 (horseplay with handgun at work was outside the scope of employment and unforeseeable by employer); *Lavender v. Illinois Cent. R. Co.*, 358 Mo. 1160, 219 S.W.2d 353, 357 (1949) (horseplay with gun, even while at work and on the clock, was outside the scope of

employment and unforeseeable by employer); *Lager v. Chicago Northwestern Trans. Co.*, 122 F.3d 523, 525 (8th Cir. 1997) (assault at work by known "bully" was outside the scope of employment and unforeseeable by employer because assailant committed no violent acts prior to that day); *Green v. River Terminal Ry. Co.*, 585 F.Supp. 1019, 1024–25 (N.D.Ohio 1984), *aff'd* 763 F.2d 805 (6th Cir.1985) (drunken fight after work at bar, though drinking had started at work, was outside the scope of employment and unforeseeable by employer as there was no notice of "vicious propensities").

In the instant case, Foster was not even at work or scheduled to be at work at the time of the assaults. He was not on duty and he was not on work premises. The fact that he was at the same diner as Appellant and the crew while Appellant and the crew ate lunch during *their* workday does not place Foster's actions within the course and scope of his employment or in the furtherance of Respondent's business. Respondent's employees' actions or inactions thus cannot be imputed to Respondent for the purpose of establishing foreseeability in this case.

Based on the foregoing, we find that Appellant did not establish that Respondent foresaw or should have foreseen Foster's assaults on Appellant such to make Respondent liable for Appellant's damages by providing an unsafe workplace. Accordingly, his point on appeal is denied.

### Conclusion

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR., P.J., and MARY K. HOFF, J., concur.