

# Missouri Court of Appeals

## Southern District

### Division Two

| | | |
|---|---|---|
| JAMES T. MITCHELL, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD35586 |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | FILED: June 25, 2019 |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Michael J. Cordonnier, Judge

### **AFFIRMED**

Jamie Mitchell ("Plaintiff") was injured twice while switching railcars at BNSF's Springfield yard. His four-count FELA petition asserted, and the court ultimately submitted, two claims for each injury: strict liability under the Safety Appliance Act ("SAA") and general negligence.[1] From jury verdicts in Plaintiff's favor on all counts, the court entered a judgment totaling $5,080,000 based on the SAA claims.

On appeal, BNSF urges that (1) the SAA did not apply because BNSF's cars

---

[1] The Federal Employers Liability Act ("FELA"), 45 U.S.C. §§ 51 *et seq.*, is the exclusive statutory remedy for railroad employees' work-related injuries. 34 Mo. Prac., *Personal Injury and Torts Handbook* § 21:1 (2018 ed.). SAA claims are asserted under FELA. ***Crane v. Cedar Rapids & Iowa City Ry. Co.,*** 395 U.S. 164, 166 (1969).

were not statutorily "in use"[2] when Plaintiff was injured; and (2) prejudice from other errors necessitates a new trial. We disagree and affirm the judgment.

## The Springfield Yard

BNSF's Springfield yard, as depicted in trial exhibits below, includes a center "bowl" of 30 short tracks numbered 101-130 south to north. Bounding this bowl are five long tracks to the north and four long tracks to the south, outside and beyond which lie other facilities, including repair shops.

On any given day, thousands of railcars pass through the yard. Cars detached from incoming trains are moved onto tracks in the bowl and later pushed back out and reassembled into new trains. There also is a "repair in place" ("RIP") track where mechanical department employees ("car men") can inspect and sometimes repair damaged cars. Cars needing inspection or repair are set apart in the bowl, then moved to track 101, also called the "spotting track," and on from there to the RIP track or repair shops.



---

[2] Like most courts and these parties, we employ "in use" as shorthand for the SAA's formal statutory language that a carrier "may use or allow to be used on any of its railroad lines ...." 49 U.S.C. § 20302(a).

## Plaintiff's 2015 Injury

Plaintiff first was injured while working in the bowl as part of a two-man switching crew. Around 3 a.m., a train being switched by another crew derailed from track 128 and struck cars on adjacent track 127. Plaintiff was sent to track 127 to move half of those cars to track 130 and did so without incident. He returned to move the other cars to spotting track 101 as initially directed, but his instructions changed. The yardmaster had checked the scene and did not want the last four cars moved until car men arrived to inspect them. Mitchell was directed to "cut" those last four cars and leave them on track 127. As Mitchell prepared to make that cut in the darkness, a handrail he was holding on one car ("NATX") broke and he fell, striking his back and head. Minutes later, car men reached track 127 and, within an hour, "bad ordered" NATX for damaged handrails and ladder.

## Plaintiff's 2017 Injury

After two surgeries and more than a year's lost time, Plaintiff returned to BNSF switching in early 2017. Soon thereafter, he could not get a pin lifter to release as he sought to uncouple a defective car ("CHVX") on track 118 so it could be moved to spotting track 101 and on to the RIP track for repair.[3] Plaintiff yanked the handle harder and harder until he hurt his back again.

## Trial Proceedings

Plaintiff's four-count FELA petition was tried to a jury. At the close of all evidence, the trial court found that NATX and CHVX were "in use" for SAA purposes when Plaintiff was injured. The trial court submitted the case to the jury on two verdict forms. Verdict A asked the jury to decide SAA liability, comparative fault, and damages as to Plaintiff's 2015 injury. Verdict B similarly submitted SAA liability, comparative fault, and damages for Plaintiff's 2017 injury.

The jury found for Plaintiff on all counts. Verdict A found for Plaintiff on the SAA claim, assessed Plaintiff 20% of fault on the negligence claim, and awarded $5,000,000 damages for the 2015 injury. Verdict B found for Plaintiff on the SAA claim, assessed Plaintiff 50% of fault on the negligence claim, and awarded

---

[3] CHVX had been taken out of road service and placed in "bad order home" status after a trackside monitor detected a wheel that might be out of specification due to wear and tear.

$80,000 damages for the 2017 injury.  The court entered a total judgment against BNSF for $5,080,000 based on the SAA claims without reduction for Mitchell's comparative fault.[4]

## Point 1 – SAA Applicability

The SAA imposes strict liability; "the carrier is not excused by any showing of care, however assiduous."  ***Brady v. Terminal R. Ass'n of St. Louis***, 303 U.S. 10, 15 (1938).  The statute has been liberally construed (***id***.) and covers handholds and coupling devices.  49 U.S.C. § 20302(a)(1)(A) & (C).  However, the SAA applies only if the defective car was "in use" at the time of injury.  ***Brady***, 303 U.S. at 13.

The trial court ruled the "in use" issues in Plaintiff's favor.[5]  BNSF claims this was error; that NATX and CHVX were not in use because they "had damage requiring repair, were in the rail yard awaiting repairs, and were under order not to be moved or returned to service until repairs were made."  The parties agree that our review is *de novo*.

The wealth of "in use" caselaw is not surprising given the national scope and long history of railroading and these statutes.[6]  The parties cite many cases in

---

[4] No issue is raised about the instruction packaging, verdict forms, or entry of judgment based solely on the SAA claims, all of which was consistent with MAI 24.03 Committee Comment B (2016 Revision) and ***Host v. BNSF Ry. Co.***, 460 S.W.3d 87, 97-101 (Mo.App. 2015).

[5]  At trial, the parties agreed this was a question of law, not a fact issue for the jury, and convinced the court reluctantly to rule it as such.  Federal cases generally take this position and our courts have cited federal opinions in following suit (*e.g.*, ***Host***, 460 S.W.3d at 101).  Yet some cases so ruled only after finding the relevant facts were undisputed. *See* ***Deans v. CSX Transp., Inc.***, 152 F.3d 326, 329 (4th Cir. 1998); ***Angell v. Chesapeake & O. Ry.***, 618 F.2d 260, 262 (4th Cir. 1980).  It is "well established" that state-court FELA cases are governed by federal substantive law, but "subject to state procedural rules."  ***Morgan v. Union Pacific R.R.***, 368 S.W.3d 219, 222 (Mo.App. 2012).  To quote ***Huntsinger v. BNSF Ry.***, 398 P.3d 403, 407 n.8 (Or. App. 2017), whether the 'in use" issue is one of fact or law may be "a procedural question on which we are not bound by federal cases that have treated it as the latter."  That said, as in ***Deans***, ***Angell***, and ***Huntsinger***, we treat the issue as legal given the parties' agreement and the undisputed nature of relevant historical facts.

[6] Various cases cited by the parties, found by this court, or cited in other courts' SAA opinions involved locomotives covered by the Locomotive Inspection Act ("LIA") or its predecessor Boiler Inspection Act ("BIA").  Courts often have considered such cases

arguing their respective positions, but none particularly fits Plaintiff's 2015 injury. Neither party cited the closest case we found, a Supreme Court case favoring Plaintiff. We quote from **Texas & P. Ry. Co. v. Rigsby**, 241 U.S. 33, 36 (1916), for its facts:

> Rigsby, while in the employ of [the railroad] as a switchman in its yard at Marshall, Texas, was engaged, with others of the yard crew, in taking some 'bad order' cars to the shops there to be repaired. The switch engine and crew went upon a spur track, hauled out three cars, and switched them upon the main line, intending to go back upon the spur track for others, to be taken with the three to the shops, which were on the opposite side of the main line from the spur track. Rigsby, in the course of his duties, rode upon the top of one of the cars … and while descending from the car to return to the spur track he fell, owing to a defect in one of the hand holds or grab irons that formed the rungs of the ladder, and sustained personal injuries. This car had been out of service and waiting on the spur track for some days, perhaps a month ….

The obvious difference is time. Plaintiff's injury was 90 minutes after the derailment, before car men arrived and "bad ordered" NATX. By contrast, **Rigsby**'s "bad order" car had been out of service and sitting dead in the yard "for some days, perhaps a month." Yet the Supreme Court summarily applied the SAA in **Rigsby** because

> although § 4 of the act of 1910 relieves the carrier from the statutory penalties while a car is being hauled to the nearest available point for repairs, it expressly provides that it shall not be construed to relieve a carrier from liability in a remedial action for the death or injury of an employee caused by or in connection with the _movement_ of a car with defective equipment.

**Id**. at 43 (our emphasis).

The statute that **Rigsby** cited remains in effect, albeit renumbered, and still preserves SAA civil liability in injury actions "arising from the _movement_ of a vehicle with equipment that is defective, insecure, or not maintained in compliance with this chapter." 49 U.S.C. § 20303(c)(our emphasis). _See also_ **Brady**, 303 U.S.

---

interchangeably because these statutes all have or had similar "in use" language. _See_ **Huntsinger**, 398 P.3d at 407 n.9.

at 15 (carrier remains statutorily liable for injuries suffered by railroad employee by defective equipment in the course of such movement).

This is illustrated by **Southern Ry. Co. v. Bryan**, 375 F.2d 155 (5th Cir. 1967), where a locomotive derailed and "was gutted by fire to the extent that it was inoperative as a locomotive." *Id*. at 157. Cranes, boom cars, and car men were sent to rerail the locomotive for transport back to the repair shop. While the locomotive was suspended in the air, a lifting eye broke, the cable backlashed, and a car man was injured. Citing **Rigsby**, the Fifth Circuit rejected the railroad's arguments that its crane-raised, fire-gutted locomotive was not "in use on its line at the time of the injury" or for a liability exemption while moving it for repair. *Id*. at 157. "Where the hauling of a disabled or defective railroad vehicle is in progress or in immediate contemplation, the handling of it for that purpose is a part of its unitary journey from the point of discovery of disability to the repair shop." *Id*. (citation and quotation marks omitted). The railroad was strictly liable even though the then-applicable BIA lacked the statutory caveat cited in **Rigsby** and **Brady** and applicable here. *Id*. at 158.

**Rigsby**, **Brady**, **Bryan**, and 49 U.S.C. § 20303(c) are better and stronger authorities than those cited by BNSF. We reject the arguments that NATX was not in use at the time of Plaintiff's 2015 injury or that BNSF was not liable under the SAA.

We find likewise as to Plaintiff's 2017 injury. Although CHVX was in "bad order" status, so was the car in **Rigsby**. CHVX was on a bowl track and had not been moved to the RIP track or repair shop, also similar to **Rigsby**. CHVX's movement for repair was "immediately contemplated or in progress" when the injury occurred, so its handling for that purpose was "part of its unitary journey" to the place of repair. **Bryan**, 375 F.2d at 157 (citing **Rigsby**). SAA liability applies. 49 U.S.C. § 20303(c).

The trial court did not err in accepting verdicts and entering judgment based on SAA strict liability. Point 1 fails.

**Point 2 – Other Alleged Errors**

Point 2 asserts that "(a) Plaintiff's counsel improperly accused a BNSF witness of destroying evidence, (b) the court admitted evidence about derailments

6

even though it was not probative of negligence, and (c) the court admitted evidence about BNSF's post-remedial investigations," resulting in prejudice that individually and cumulatively warrants a new trial.

BNSF rightly calls its first complaint the "most egregious." The trial judge himself called the issue "significant," "problematic," and "concerning," and felt "very disturbed by what occurred." We share those feelings,[7] but know the trial judge was far better positioned to assess potential effects on the jury. We find no basis to second guess that court's rulings, which were within its broad discretion, or declare error in its failure to order a new trial on this ground.

As to the other complaints (indeed, all three), we cannot see prejudice. BNSF claims derailment evidence was not probative of its negligence, and post-accident investigations could not be used to prove antecedent negligence. However, the court entered judgment on the verdicts for strict liability, not negligence.

BNSF also claims Plaintiff cited the investigative results to mislead jurors into believing Plaintiff had been determined to be free from fault. Yet Plaintiff's negligence likewise was irrelevant to the SAA verdicts and judgment.

On this record, strict liability necessarily followed from the "in use" findings affirmed in Point 1. No new trial on any ground would change that. We need not evaluate these claims of error; a new trial would not affect the judgment entered.[8] We deny Point 2 and affirm the judgment.

DANIEL E. SCOTT, J. – OPINION AUTHOR
JEFFREY W. BATES, J. – CONCURS
WILLIAM W. FRANCIS, JR., P.J. – CONCURS

---

[7] Seemingly even more off-putting to the trial judge, as to us, were counsel's subsequent attempts to justify what he did, which continue into footnote 12 of Respondent's Brief on appeal. As disconcerting as these may be, none occurred in the jury's presence, so they could not have impacted the verdicts.

[8] Although Point 2 alleges that BNSF "did not receive a fair trial on liability or damages," the supporting argument failed to develop this as to damages, so case law deems that assertion abandoned. *See, e.g.*, ***Lack v. Payne***, 151 S.W.3d 862, 867 (Mo.App. 2004).