

# In the Missouri Court of Appeals

# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| JEANNE M. NANGLE, | ) | No. ED102919 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | |
| FREDA L. BROCKMAN, | ) | |
| Defendant/Appellant | ) | |
| and | ) | Hon. Colleen M. Dolan |
| | ) | |
| WILLIAM T. FORGY, in his capacity | ) | |
| as Trustee of the Freda Louise Brockman | ) | |
| Trust, | ) | |
| | ) | |
| Defendant. | ) | FILED: February 23, 2016 |

## Introduction

Appellant Freda Brockman ("Brockman") appeals from the judgment of the trial court granting summary judgment in favor of Respondent Jeanne Nangle ("Nangle") in an action to quiet title in favor of Nangle with respect to five pieces of property formerly owned by Brockman. Because Nangle demonstrated the right to judgment as a matter of law on the basis of facts as to which there is no genuine dispute, we affirm the judgment of the trial court.[1]

---

[1] Nangle's motion to strike Brockman's amended brief taken with the case is denied.

<u>Factual and Procedural History</u>

In late 2011, Nangle filed suit in the Circuit Court of St. Louis County ("the trial court") seeking to quiet title to five properties located in St. Louis County in her favor: 41 Gravois, 49 Gravois, 211 Main Street, 731 Larkin Williams Road, and 817 Larkin Williams Road. In 2014, Nangle filed a motion for summary judgment as to each count of her Second Amended Petition, which the trial court granted on December 17, 2014. Viewed in the light most favorable to Brockman, the record before the trial court contained the following undisputed material facts:

**I. The Nangle-Brockman Proceedings in State Court**

In 1996, Donald Nangle ("Donald"),[2] an attorney, brought suit against Brockman seeking to collect fees for legal services rendered. The Circuit Court of the City of St. Louis, following a jury verdict, rendered judgment in favor of Donald in the amount of $117,598.08. That same year, Donald assigned the judgment to his wife, Nangle. On appeal, this Court affirmed the judgment in part and reversed in part, resulting in a net judgment of $112,831.00 (referred to throughout this opinion as "the 1996 Nangle-Brockman judgment").[3] In 2002, Nangle assigned the 1996 Nangle-Brockman judgment to the trustee in Donald's bankruptcy estate. In 2009, the bankruptcy trustee reassigned the judgment back to Nangle.

The current dispute between Nangle and Brockman, as mentioned, stems from Nangle's action to quiet title to five properties located in St. Louis County: 41 Gravois, 49 Gravois, 211 Main Street, 731 Larkin Williams Road, and 817 Larkin Williams Road. There is no dispute that, as of 2011, Brockman owned each of the five properties.[4]

---

[2] To avoid confusion, we refer to Donald Nangle by first name throughout our opinion. This Court intends no disrespect in doing so.

[3] The 1996 Nangle-Brockman judgment was revived in 1999, 2002, and 2005. The validity of these revivals is not disputed by the parties.

[4] Brockman owned 731 Larkin Williams Road and 817 Larkin Williams Road outright. With respect to 41 Gravois, 49 Gravois, and 211 Main Street, Brockman signed a quitclaim deed in 1990 purporting to transfer these three properties to William Forgy ("Forgy") as "Trustee." At the same time, as "Settlor," Brockman signed a document

2

In 2011, on the basis of the 1996 Nangle-Brockman judgment, Nangle requested a writ of execution directing the Sheriff of St. Louis County to levy upon and sell each of the five properties mentioned above. The Circuit Court of the City of St. Louis issued executions in 2011 directing the Sheriff of St. Louis County to levy upon and sell 41 Gravois, 49 Gravois, and 211 Main Street. The Circuit Court later issued executions in 2012 directing the Sheriff of St. Louis County to levy upon and sell 731 Larkin Williams Road and 817 Larkin Williams Road. The Sheriff did so with respect to each property.

At subsequent Sheriff's execution sales, Nangle made a credit bid of $50,000 for the purchase of 41 Gravois; a credit bid of $20,000 for the purchase of 49 Gravois; a credit bid of $5,000 for the purchase of 211 Main Street; a credit bid of $35,000 for the purchase of 731 Larkin Williams Road; and a credit bid of $20,000 for the purchase of 817 Larkin Williams Road. Each of the five properties was sold to Nangle for the amount listed above and conveyed to Nangle by the execution of a Sheriff's Deed. In 2014, Nangle paid to LPP Mortgage Ltd. ("LPP") all amounts due on the note which was secured by the deed of trust held by LPP on 41 Gravois, 49 Gravois, and 211 Main Street. LPP has prepared and recorded a deed of release.

## II. The Muegler Proceedings in Federal Court

Arthur Muegler, Jr. ("Muegler"), the attorney who represented Donald in the 1996 Nangle-Brockman judgment, was sued on a separate matter in the United States District for the Eastern District of Missouri ("District Court") by David Bening and Albert Harre ("the Bening

entitled "Inter Vivos Trust Agreement" which identified Forgy as "Trustee." The "Inter Vivos Trust Agreement" made Brockman the sole beneficiary of the trust during her lifetime and reserved the following rights for Brockman as Settlor: "To revoke this agreement at any time, in whole or in part, and to withdraw from the trust created hereby at any time any or all of the property comprising the trust estate, all without the consent of, or notice to, any beneficiary." In 1993, Brockman entered into a transaction with the Small Business Administration ("SBA") in which she borrowed the principal sum of $20,000 and, as security for the repayment of the loan, executed a deed of trust with respect to 41 Gravois, 49 Gravois, and 211 Main Street. Brockman signed this deed of trust "individually" as "Freda Brockman, single person." In 2001, the SBA assigned the deed of trust to LPP Mortgage Ltd.

3

plaintiffs"). After obtaining a judgment against Muegler, the Bening plaintiffs sought to collect on the judgment in 1999 by filing a Motion for Creditor's Bill and Equitable Garnishment in the District Court against Nangle and Donald, alleging that the Nangles were indebted to Muegler.

The summary judgment evidence presented to the trial court contained two sources of information regarding the Creditor's Bill and Equitable Garnishment proceedings in the District Court. First, the docket sheet from the District Court was submitted to the trial court. The docket sheet contained entries pertaining to the Creditor's Bill and Equitable Garnishment action. An entry dated 02/23/1999 reads as follows: "MOTION by plaintiff Alfred W. Harre, plaintiff David Bening for order for Creditor's Bill and Equitable Garnishment (CQL) (Entered: 02/23/1999)." Directly below that docket entry, also dated 02/23/1999, is the following entry: "PRELIMINARY ORDER IN AID OF EXECUTION AND OF CREDITORS BILL AND EQUITABLE GARNISHMENT (See this Order for Details) by Honorable Charles A. Shaw granting Motion for Order to Creditor's Bill and Equitable Garnishment... (cc: all counsel) (CQL) (Entered: 02/23/1999)." No other docket entries referencing the Creditor's Bill and Equitable Garnishment proceedings in the District Court were submitted as evidence to the trial court.

Second, the Preliminary Order in Aid of Execution and of Creditors Bill and Equitable Garnishment ("1999 Preliminary Order") referenced in the latter docket entry above was submitted to the trial court. The 1999 Preliminary Order, entered on February 23, 1999, stated that the Bening plaintiffs were "entitled to levy, attach and seize all of Defendant Muegler's rights, liens and interests, whether direct, indirect, liquidated, unliquidated, contingent or certain, in and to" the 1996 Nangle-Brockman judgment. The 1999 Preliminary Order also noted that the Nangles had initiated an execution action in the Circuit Court of the City of St. Louis seeking to

4

have the St. Louis County Sheriff levy upon and seize certain real property owned by Brockman in St. Louis County in order to satisfy the 1996 Nangle-Brockman judgment. The District Court further noted that the aforementioned property was to be sold at public action, and that the auction sale was scheduled for March 9, 1999, in St. Louis County. As a result, the District Court concluded "it appears that [the Bening plaintiffs] may be entitled to a portion of the proceeds of the [1996 Nangle-Brockman judgment], and that [the Bening plaintiffs] have no adequate remedy at law and are entitled to the equitable relief and assistance of this Court supplementary to and in aid of the aforesaid Judgments and the execution and satisfaction thereof."

The 1999 Preliminary Order "ordered, adjudged and decreed" the following: (1) that "Garnishee Brockman is temporarily and preliminarily enjoined and prohibited from paying any money, funds or other value to Defendant Muegler or to Garnishees or to any other party in satisfaction of the aforesaid judgment entered against her in" the 1996 Nangle-Brockman judgment; (2) that "Defendant Muegler and Garnishees are temporarily and preliminarily enjoined and prohibited from obtaining or receiving any money, property, funds or other value from Garnishee Brockman or from any other party in satisfaction of the aforesaid judgment entered in" the 1996 Nangle-Brockman judgment; (3) that in the event Brockman elected to pay or satisfy any portion of the 1996 Nangle-Brockman judgment, "she shall pay and deposit any and all such money or funds incident thereto into the Registry of this Court;" (4) that the Garnishees could proceed with the execution sale of Brockman's property scheduled for March 9, 1999, but any proceeds of the sale must be paid into the Registry of the Court, any interest which accrued to Muegler or the Garnishees would be levied, attached, and made subject to the order, and if Muegler or the Garnishees were the successful bidder at the auction sale, all deeds

5

must be deposited into the Registry of the Court; and (5) that "Defendant Muegler and Garnishees are temporarily and preliminarily enjoined and prohibited from obtaining possession of any such funds or property and from any action or attempt to obtain possession or to cause the disbursement of the aforesaid funds or property from the Registry of this Court or from the aforesaid execution sale."

### III. Nangle's Present State Court Action to Quiet Title

In December 2011, Nangle filed a Petition in state court seeking to quiet title to the five properties mentioned above. Nangle filed a Second Amended Petition to quiet title action in 2012. In 2014, Nangle filed a motion seeking summary judgment in her favor on each count of her Second Amended Petition. Nangle filed a statement of uncontroverted material facts in support of her motion for summary judgment. Brockman filed a response to Nangle's summary judgment pleadings admitting the vast majority of Nangle's statement of uncontroverted material facts. The few material facts which Brockman denied were followed by bare statements of legal argument. Brockman did not provide the trial court with evidence contained in any document such as an affidavit or a deposition that supported her denial of Nangle's statement of uncontroverted material facts. Brockman's responses to Nangle's statement of uncontroverted material facts contained no citations to any supporting documents of any kind, other than a reference to the 1999 Preliminary Order and passing references to proceedings in the District Court.

Brockman did not file a statement of additional uncontroverted material facts with the trial court, although she filed a memorandum in opposition to Nangle's motion for summary judgment. In her memorandum, Brockman argued that the 1999 Preliminary Order entered by Judge Shaw was still in effect. In support of this statement, Brockman attached an affidavit from

David Waltrip ("Waltrip"), the attorney for the Bening plaintiffs. In his affidavit, Waltrip stated that the judgment obtained by the Bening plaintiffs against Muegler remained a valid judgment, and therefore, the 1999 Preliminary Order "still remains in full force and effect." Brockman further stated that "Judge Shaw's [1999 Preliminary Order] did not expire, and [the Nangles] have been apprised all along that there must be compliance with the existing order by Judge Shaw." Brockman concluded that "this factual issue alone defeats" Nangle's motion for summary judgment, reasoning that the Nangles had "no right to execute on the judgment until such time as they attend to the directive and order of Judge Shaw."

In her motion for summary judgment, Nangle asserted she was entitled to judgment quieting title to the five properties in her name, as a matter of law, because the undisputed facts showed that (1) Brockman was the sole owner of each of the five properties, leaving them subject to execution in satisfaction of her debt; (2) the Circuit Court of the City of St. Louis issued executions as to each; (3) the St. Louis County Sheriff levied upon and sold the five properties to Nangle; and (4) the 1999 Preliminary Order is no longer in effect, and even if it was, it does not enjoin Nangle's collection of the 1996 Nangle-Brockman judgment, which was rendered in a separate state court proceeding.

On December 17, 2014, the trial court issued an Order and Judgment granting summary judgment in favor of Nangle, quieting title in her favor with respect to each of the five properties. The trial court did not explain its rationale for granting summary judgment in Nangle's favor. This appeal follows.

### Points on Appeal

Brockman raises two points on appeal. First, Brockman contends the trial court erred in granting summary judgment in favor of Nangle because the judgment violates the Supremacy

7

Clause of the United States Constitution in light of the contravening District Court order previously entered by Judge Shaw. Second, Brockman avers the trial court erred in granting summary judgment in favor of Nangle because the judgment violates a 2003 decision of the Bankruptcy Court regarding Donald's bankruptcy estate.

## Standard of Review

When considering an appeal from a grant of summary judgment, our review is essentially *de novo*. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is purely an issue of law. Id. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. Id. Accordingly, this Court reviews the record in the light most favorable to the party against whom judgment was entered. Id. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion, and we accord the non-movant the benefit of all reasonable inferences from the record. Id.

Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. Id.; Rule 74.04. Summary judgment proceeds from an analytical predicate that, where the facts are not in dispute, a prevailing party can be determined as a matter of law. ITT Commercial Fin. Corp., 854 S.W.2d at 376. However, because summary judgment "borders on denial of due process in that it denies the opposing party his day in court," the procedure has long been regarded as "an extreme and drastic remedy" which should be utilized with "great care." Id. at 377.

8

When a trial court has granted summary judgment without specifying the basis for granting the motion, this Court may affirm the trial court's decision under any appropriate theory. Cent. Missouri Elec. Co-op. v. Balke, 119 S.W.3d 627, 635 (Mo. App. W.D. 2003). Further, if the trial court's order does not set forth its reasoning, the trial court is presumed to have based its decision on the grounds specified in the motion for summary judgment. Id.

Discussion

The purpose of summary judgment under Missouri's fact-pleading regime is to identify cases (1) in which there is no genuine dispute as to the facts and (2) the facts as admitted show a legal right to judgment for the movant. ITT Commercial Fin. Corp., 854 S.W.2d at 380. The burden on the summary judgment movant—here, Nangle—is to show a right to judgment flowing from facts about which there is no genuine dispute. Id. at 378. Summary judgment tests simply for the existence, not the extent, of these genuine disputes. Id. The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question. Id. at 380.

Once the movant has made a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law, the burden shifts to the non-movant to prove the existence of genuine issues of material fact. Id. at 381. Once the burden shifts, the non-movant—here, Brockman —"may not rest upon the mere allegations or denials of his pleading, but [her] *response*, by affidavits or as otherwise provided in this Rule 74.04, *shall set forth specific facts* showing that there is a genuine issue for trial." Id.; Rule 74.04(e). Thus, at that point "the non-movant's *only* recourse is to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material

9

facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." ITT Commercial Fin. Corp., 854 S.W.2d at 381.

The record before us shows that Brockman did not present any specific facts to the trial court—"by affidavit, depositions, answers to interrogatories, or admissions on file"—showing the existence of any genuine disputed issues of material fact.[5] Accordingly, we must determine whether Nangle is entitled to summary judgment as a matter of law based upon those facts submitted to the trial court by Nangle. In light of the factual statements asserted as uncontroverted by Nangle, Brockman maintains that the 1999 Preliminary Order entered by Judge Shaw in the District Court action remains in effect, and, consequently, the Supremacy Clause precludes the trial court from granting Nangle the relief she requests to quiet title to the five properties.[6] Thus, Brockman contends that the trial court erred in granting summary judgment in favor of Nangle. We are not persuaded.

The undisputed facts before the trial court were as follows: (1) Donald obtained a judgment of $112,831.00 against Brockman in the 1996 Nangle-Brockman judgment; (2) Nangle was the holder of the 1996 Nangle-Brockman judgment since 2009; (3) the Circuit Court of the City of St. Louis issued executions as to each of the five pieces of property in question; (4) at the time of the executions, Brockman was the sole owner of each property; (5) the Sheriff of St. Louis County levied upon and sold each property to Nangle; and (6) Judge Shaw entered the 1999 Preliminary Order in the District Court action.

---

[5] Waltrip's self-serving affidavit, in which he merely expresses his opinion that the 1999 Preliminary Order is still in effect, is not sufficient to establish the existence of a genuine disputed issue of fact.

[6] Although Brockman's second point on appeal references a 2003 Bankruptcy Court decision, the accompanying argument reveals it is nothing more than a restatement of her first point on appeal: that the 1999 Preliminary Order is still in effect and prevented the trial court from quieting title in favor of Nangle. Accordingly, we will address both points together. Brockman is encouraged to be mindful of Rule 84.04(e) in future appeals, which directs appellants to limit their argument to the error specified in the corresponding point on appeal.

Before we reach Brockman's argument that the Supremacy Clause precluded the state court from entering a judgment inconsistent with the 1999 Preliminary Order, we must consider whether there was any summary judgment evidence before the trial court to suggest that the 1999 Preliminary Order was in effect when the trial court entered summary judgment quieting title to the five subject properties. Even assuming, *arguendo*, that the entry of the 1999 Preliminary Order by the District Court lawfully could preclude a state court from taking any action with regard to the five subject properties, unless the 1999 Preliminary Order remained in effect in December 2014, the trial court properly entered summary judgment in Nangle's favor because there is no dispute that the Circuit Court of the City of St. Louis issued executions as to each property, and that the St. Louis County Sheriff levied upon and sold the properties to Nangle.

In the absence of a controlling federal statute, a federal district court has the same authority to aid judgment creditors in supplementary proceedings as that which is provided to state courts under local law. U. S. ex rel. Goldman v. Meredith, 596 F.2d 1353, 1357 (8th Cir. 1979). A creditor's bill is one such equitable remedy available under Missouri law. Id. Any request for injunctive relief in federal court, like the one made by the Bening plaintiffs, must be in accord with the procedures set forth in Rule 65 of the Federal Rules of Civil Procedure. At the time of the 1999 Preliminary Order, Rule 65 described the procedure for obtaining an injunction in federal court, including a temporary restraining order ("TRO"), a preliminary injunction, and a permanent injunction.[7]

The 1999 Preliminary Order was titled as a "Preliminary Order" and specified that Nangle was "temporarily and preliminarily enjoined" from taking certain actions. The nomenclature used by the District Court raises some confusion as to whether the 1999

---

[7] All references to Rule 65 are to the version of the Rule which was current at the time of the 1999 Preliminary Order.

11

Preliminary Order constituted a TRO or a preliminary injunction under the federal rules. This distinction is critical because a TRO is of limited duration. Pursuant to Rule 65(b) a TRO "shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record." Fed. R. Civ. P. 65(b). A TRO expires within 10 days of entry unless some additional affirmative action is taken.

When the 1999 Preliminary Order was entered by the District Court, Rule 65(a) outlined the procedure for obtaining a preliminary injunction. Importantly, Rule 65(a) did not permit the issuance of a preliminary injunction "without notice to the adverse party." Fed. R. Civ. P. 65(a)(1). On the other hand, "[a] temporary restraining order may be granted *without written or oral notice* to the adverse party or such party's attorney only if" certain procedures were followed. Fed. R. Civ. P. 65(b) (emphasis added).

Here, the summary judgment record before the trial court consisted of two pieces of relevant evidence regarding the District Court proceedings: the 1999 Preliminary Order and the corresponding docket sheet from the District Court.[8] Neither the express language of the 1999 Preliminary Order nor any of the associated docket entries indicate that Nangle was given notice prior to the entry of the 1999 Preliminary Order. Further, the docket sheet reveals that Judge Shaw entered the 1999 Preliminary Order on the same day the Bening plaintiffs filed their motion seeking said Order. Without some evidence suggesting that Nangle was provided notice prior to the entry of the 1999 Preliminary Order, the trial court could not lawfully find that the 1999 Preliminary Order was a preliminary injunction that remained in effect in 2014. To the

---

[8] Brockman's appellate brief repeatedly references a 2015 order entered by Judge Shaw in District Court in the Bening-Muegler case. Not only did that judgment occur *after* the trial court granted summary judgment (and thus was not in the record before the trial court), but Brockman has not included that order in the record on appeal.

12

contrary, the uncontroverted evidence before the trial court in the summary judgment record mandated a finding, as a matter of law, that the 1999 Preliminary Order entered by Judge Shaw in the District Court was a TRO. As Rule 65(b) clearly specified, a TRO expires no more than 10 days after its entry unless it is extended by the court for a longer period, the reasons for which must be entered of record. Here, the record before the trial court was devoid of any indication that the 1999 Preliminary Order was ever extended by the District Court. The docket sheet contains no entry referencing any extension of the Order. Lacking any evidence that could support a factual claim that the 1999 Preliminary Order was extended beyond 10 days of its entry on February 23, 1999, the trial court had no lawful basis to conclude that the 1999 Preliminary Order remained in effect when it entered summary judgment in favor of Nangle in December of 2014.

There exists no genuine factual dispute that Nangle, the holder of the 1996 Nangle-Brockman judgment, purchased the five properties owned by Brockman at a Sheriff's sale after the Circuit Court of the City of St. Louis issued executions in 2011 as to each property and the Sheriff of St. Louis County levied upon each property. Further, the trial court could not have concluded, based on the summary judgment evidence before it, that the 1999 Preliminary Order remained in effect at the time of Nangle's motion for summary judgment.[9] Accordingly, Nangle demonstrated her right to judgment as a matter of law quieting title to the five properties at issue on the basis of facts as to which there is no genuine dispute. The trial court did not err in granting Nangle's motion for summary judgment.

---

[9] Because the summary judgment record contained no evidence that the 1999 Preliminary Order did not expire in conformity with the requirements of Rule 65 prior to the trial court's entry of summary judgment, we do not address Brockman's argument that the Supremacy Clause operated to preclude any state court action.

Conclusion

The judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Lisa Van Amburg, C.J., concurs.

14