Joan BRAY, Respondent,

The Reporters Committee for Freedom of the Press, American Civil Liberties Union of Missouri Foundation and Christopher S McDaniel, Respondents,

Guardian News and Media LLC, et al., Respondents,

v.

George LOMBARDI, in His Official Capacity as Director of the Missouri Department of Corrections, Matt Briesacher, in His Official Capacity as Deputy Counsel of the Missouri Department of Corrections and Missouri Department of Corrections, Appellants.

WD 79893 Consolidated with WD 79894

Missouri Court of Appeals, Western District.

OPINION FILED: February 14, 2017

Application for Transfer to Supreme Court Denied March 28, 2017

Application for Transfer Denied May 30, 2017

Elizabeth Unger Carlyle, Kansas City, MO, for Respondents.

Stephen C. Doerhoff, Michael J. Spillane, Jefferson City, MO, for Appellant.

Before Division Two: Lisa White Hardwick, Presiding Judge, Karen King Mitchell, Judge, Anthony Rex Gabbert, Judge

Anthony Rex Gabbert, Judge

## Introduction

George Lombardi, in his official capacity as Director of the Missouri Department of Corrections ("the DOC") appeals the judgment of the Circuit Court of Cole County, Missouri ("trial court") in favor of Joan Bray which awarded attorney's fees to Bray, pursuant to Section 610.027, RSMo Cum. Supp. 2013, specifically due to the trial court's conclusion that the DOC violated the Sunshine Law. On appeal, the DOC argues that: (1) the trial court erred in granting partial summary judgment and ordering disclosure of records that are protected by Section 546.720.2, RSMo Cum. Supp. 2013; (2) the trial court erred in awarding attorney's fees because the DOC did not knowingly or purposely violate the Sunshine Law; (3) the trial court erred in ruling the DOC violated the Sunshine Law by failing to produce records in existence at the time of the records request, but not records existing between the date of the request and the DOC's response; and (4) the trial court erred in finding the DOC violated the Sunshine Law, purposely or otherwise, by not producing records in the public domain previously filed in federal court because such records are closed by Section 546.720. We reverse.

## Factual and Procedural Background

On August 28, 2007, House Bill 820 took effect. As enacted, the bill added the following subsection to Section 546.720:

The director of the department of corrections shall select an execution team which shall consist of those persons who administer lethal gas or lethal chemicals and those persons, such as medical personnel, who provide direct support for the administration of lethal gas or lethal chemicals. The identities of members of the execution team, as defined in the execution protocol of the department of corrections, shall be kept confidential.

§ 546.720.2.

From 2007 to 2013, the execution protocol included medical personnel contracted by the DOC who were present at the executions. Also during this time period, the DOC released information about the source of the lethal injection drugs upon request. On October 18, 2013, the DOC revised the definition of the execution

team in its protocol and added additional members to the execution team. The execution protocol now reads:

The execution team consists of department employees and contracted medical personnel including a physician, nurse, and pharmacist. The execution team also consists of anyone selected by the department director...including individuals who prescribe, compound, prepare, or otherwise supply the chemicals for use in the lethal injection procedure.

In this same October 18, 2013, revision, the DOC included pentobarbital as its execution drug. The DOC did so because their previous international supplier of propofol requested that all remaining supplies no longer be used and returned. The DOC was forced to search for pharmacists to provide pentobarbital. The only individuals willing to provide the lethal chemical required the assurance of confidentiality; therefore, the DOC revised its execution protocol to ensure that pharmacists providing lethal injection drugs were protected from exposure.

On November 5, 2013, Joan Bray submitted a Sunshine Law request, seeking records regarding "the drug pentobarbital, any of its precursors, and any and all other drugs that the department of corrections intends to utilize in executions." The request further included any and all records indicating the source of any of the specified drugs in the DOC's current inventory.

On November 18, 2013, Deputy Counsel for the DOC, Matthew Briesacher, responded to the request, but redacted information that could possibly reveal identities of the execution team members who supplied pentobarbital, citing Section 546.720.2. On January 31, 2014, Bray filed suit seeking to reveal the source of the suppliers of pentobarbital.

On April 15, 2014, Guardian US submitted a request to the DOC's custodian of records seeking access to certain public records relating to the State's use of lethal injection drugs in executions. Relevant here is their request for the source of the execution drugs and the chemical composition itself. The DOC acknowledged receipt of Guardian's request on April 17, 2014. On April 25, 2014, the DOC produced a one-page document containing the public portions of the execution protocol, and advised that some of the information requested is a closed record pursuant to Sections 217.075, RSMo 2000, 546.720, and 610.021 RSMo Cum. Supp. 2013.

On May 2, 2014, the Associated Press submitted a Sunshine Law request identical to the Guardian's April 15 request. One week later, on May 9, 2014, *The Kansas City Star*, *The St. Louis Post–Dispatch*, and *The Springfield News–Leader* submitted identical Sunshine Law requests to the DOC. On May 12, 2014, the DOC replied to each request with a response that was identical in all relevant aspects to what was given to the Guardian. The DOC cited to the same statutory provisions in its denial of the May 9 requests, attached the same one-page execution protocol, and did not release the documents containing information it believed to be protected.

On May 15, 2014, all of the media outlets, as Respondents, filed a petition in the Circuit Court of Cole County, alleging violations of the Sunshine Law and the public's constitutional right of access to government proceedings and records.

On December 3, 2014, Respondents moved for summary judgment on their Sunshine Law claims, and on December 19, 2014, the DOC cross-moved for summary judgment on the same claims. The DOC asserted that Section 546.720.2 authorized its withholding of some responsive documents under the Sunshine Law exemption that permits certain records being

withheld because they are protected from disclosure by law per Section 610.021(14), RSMo. Cum. Supp. 2013. The DOC further argued that a law protecting "offender records" created grounds for withholding other responsive documents as "internal administrative reports or documents relating to institutional security."

On July 15, 2015, the trial court entered partial summary judgment upon a finding that the statutes cited by the DOC do not protect from disclosure any records relating to the source of the execution drugs. The trial court found that the DOC had a duty to produce records in existence at the time the DOC produced records, but were not in existence when the records request was made, even though the request sought documents relating to the "current inventory" of drugs. The court made a finding that the DOC violated the Sunshine Law when it listed the statutory exemptions on the same day it produced records.

Based on the summary judgment motions, the trial court concluded that the DOC knowingly failed to comply with the Sunshine law because the plain language of the statutes did not authorize closure of the records. The trial court cited the requirement in Section 610.011.1, RSMo Cum. Supp. 2013, that Missouri law be construed liberally in favor of disclosure and against secrecy. The trial court found DOC's interpretation of "direct support for the administration" of chemicals to be too broad and misplaced. The trial court further found a violation of the Sunshine Law when the DOC made "a frivolous claim that the request sought documents that fell within Section 217.075 RSMo."

On July 29, 2015, the trial court held a case review by conference call wherein Respondents sought immediate disclosure of the records not protected by statute. The DOC asked for a stay of disclosure until appellate review concluded. The trial court granted the stay, but ordered the DOC to produce a privilege log in thirty (30) days describing the withheld records.

In compliance with court orders, the DOC produced the privilege log. Respondents filed objections citing issue with the sufficiency of the DOC's log. Specifically, Joan Bray wanted the log to include records not in existence at the time of her November 5, 2013 request, and the Guardian objected that the log did not include records relating to the qualifications of the nurse and doctor on the execution team.

On September 17, 2015, the trial court conducted an evidentiary hearing to determine which individuals qualify as an execution team member under Section 546.720.2. At issue were eight entities whose identities the DOC asserted were protected by statute. This included three non-medical DOC personnel ("NM1", "NM2", "NM3"), a nurse who participates in executions ("M2"), an anesthesiologist who participates in executions ("M3"), a physician who prescribes lethal injection drugs ("M5"), and the pharmacists who provide the DOC with lethal injection drugs ("M6" and "M7"). Matthew Briesacher, in his capacity as Deputy Counsel for the DOC, testified about the roles each anonymous entity plays in the execution process. During his testimony, Briesacher testified that pharmacists "M6" and "M7" are not on-site at the correctional facility in Bonne Terre, Missouri during the executions, nor do they prepare the chemicals in the execution room of the facility. Briesacher noted that, to his knowledge, neither M6 nor M7 have ever visited the correctional facility.

On March 21, 2016, the trial court entered judgment in the three separate cases. The judgments incorporated the July 15, 2015 orders finding that records containing the identities of M6 and M7 are not protected by an exemption. The court

found that M5, the doctor who writes prescriptions for the pentobarbital, while not present during the executions, does provide direct support for the administration of the lethal chemicals and is, therefore, properly included in the "execution team" under Section 546.720. The trial court found additional violations by the DOC of the Sunshine Law in the judgments. In the Bray case, the court found that the DOC knowingly violated the Sunshine Law because Briesacher "failed to review fully the court's order of July 15 before providing the initial privilege log and omitted from the log documents that the court's order specified as responsive." In the Guardian matter, the trial court found that, "by refusing to disclose these documents already in the public domain, the DOC purposely violated the Sunshine Law."

On April 19, 2016, the DOC filed post-trial motions to amend the judgments, arguing that the trial court applied the wrong legal standard for purposeful violations under Section 610.027. The DOC further asserted that the trial court erred in its entry of summary judgment in favor of Respondents because the information pertaining to the sources of the execution drugs are protected by statute. The trial court denied these motions on July 18, 2016. The DOC appeals. On July 26, 2016, this Court granted the DOC's motion to consolidate the Guardian and Reporters Committee appeals with the Bray appeal.

## Point I

In its first point on appeal, the DOC argues that the trial court erred in ordering the disclosure of records that could identify M6 and M7, because the records are protected from disclosure by Section 546.720.2.

## Standard of Review

An appellate court's review of an appeal from summary judgment is essentially de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Summary judgment is appropriate where the moving party establishes a right to judgment as a matter of law and that no genuine issue of material fact exists." *United Mo. Bank, N.A. v. City of Grandview*, 105 S.W.3d 890, 895 (Mo. App. 2003). Whether summary judgment should be granted is an issue of law, and "an appellate court need not defer to the trial court's order granting summary judgment". *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376.

## Discussion

We first address whether the identities of the sources of lethal injection drugs are protected by Section 546.720.2 as the DOC argues, because if such information is in fact exempted from disclosure, the trial court erred in finding that the DOC knowingly and purposefully violated the Sunshine Law by not providing such information.

"A court must carefully examine a statute in order to determine the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *Lonergan v. May*, 53 S.W.3d 122, 126 (Mo. App. 2001). When deciding whether a statute is clear and unambiguous so as to ascertain the intent of the legislature, the appellate court must consider whether the language is plain and clear to a person of ordinary intelligence. *Wheeler v. Bd. of Police Comm'rs of Kansas City*, 918 S.W.2d 800, 803 (Mo. App. 1996). Only when the language is ambiguous or if its plain meaning would lead to an illogical result will the court look past the plain and ordinary meaning of a statute. *Lonergan*, 53 S.W.3d at 126. Further, "the interpretation and

construction of a statute by an agency charged with its administration is entitled to great weight." *Farrow v. Saint Francis Medical Center*, 407 S.W.3d 579, 592 (Mo. banc 2013). If an agency's interpretation of a statute is reasonable and consistent with the language of the statute, it is entitled to considerable deference. *Morton v. Missouri Air Conservation Com'n*, 944 S.W.2d 231, 236 (Mo. App. 1997).

We need only look to Section 546.720 because Section 610.021(14) of Missouri's Sunshine Law does not require production of "records which are protected from disclosure by law," and Section 546.720 clearly provides such protection for the records requested by Respondents because it protects records that could potentially identify execution team members. Section 546.720.2 states, in relevant part:

> The director of the department of corrections shall select an execution team which shall consist of those persons who administer lethal gas or lethal chemicals and those persons, such as medical personnel, who provide direct support for the administration of lethal gas or lethal chemicals. The identities of members of the execution team, as defined in the execution protocol of the department of corrections, shall be kept confidential. Notwithstanding any provision of law to the contrary, any portion of a record that could identify a person as being a current or former member of an execution team shall be privileged and shall not be subject to discovery, subpoena, or other means of legal compulsion for disclosure to any person or entity, the remainder of such record shall not be privileged or closed unless protected from disclosure by law.

This statute is unambiguous. The Missouri legislature delegated authority to the DOC and its Director to exercise its own discretion in selecting an execution team by providing that "members of the execution team" be defined by the DOC in the execution protocol of the DOC. *Id.* The language selected by the legislature places no limits on the Director as to what individuals or professional titles can be selected for the execution team.

Here, the Director acted within the discretion granted by the legislature when he revised the execution protocol on October 18, 2013, to include pharmacists ("M6" and "M7") as execution team members. There is nothing within the language of the statute that suggests that the legislature intended for pharmacists to be excluded from the protections provided by the statute, or intended for courts to second-guess the wisdom of the DOC, unless it is apparent that the DOC abused the discretion granted by the legislature. We disagree with the trial court's characterization of the DOC's reading of the statute as a "gross misinterpretation."

Further, it is apparent that the intent of the legislature was to protect the identities of those individuals essential to the execution process so that the DOC may effectively carry out its statutory duty of performing lawful executions.[1] It is a foreseeable consequence of releasing the identifying information of pharmacists supplying execution drugs that such pharmacists could face harassment, or even threats of violence, by those seeking to thwart executions via avenues which bypass the legislature. Releasing the identities of the drug suppliers could serve as a back-door means to frustrating the State's ability to carry out lawful executions by lethal injection.

---

1. "When the Missouri Supreme Court issues an execution warrant, it shall be obeyed by the Director of the Department of Corrections." § 546.710, RSMo 2000.

The need for protection from exposure of the pharmacist supplier's identity is discussed in *In re: Missouri Department of Corrections,* 839 F.3d 732 (8th Cir. 2016). Here, two Mississippi death row inmates challenged their executions under the Eighth Amendment. The inmates served the Missouri Department of Corrections with a third party subpoena seeking information regarding the identity of the DOC's pentobarbital supplier. When the district court ordered that the identity be released, the DOC filed a writ of mandamus to prevent enforcement of that order. M7 also intervened. The U.S. Court of Appeals for the Eighth Circuit granted the writ after consideration of all relevant factors. In its findings, the Court directly cited to M7's statements that he or she intended to cease supplying lethal injection drugs if his or her identity was disclosed. Ultimately, the Court concluded that the harm to the DOC clearly outweighed the need for disclosure, and disclosure would represent an undue burden on the DOC's duty of carrying out lawful executions. The DOC's writ was granted and the District Court's order to reveal the identity was overruled.

The language of the statute is clear and unambiguous, and based on the plain and ordinary meaning of the language, we find that the legislature meant to protect the identities of those who are imperative to carrying out executions, as determined by the DOC. Therefore, we find pharmacists "M6" and "M7" to be members of the execution team and their identities protected under Section 546.720. Point one is granted.

## Point II & Point III

Because we find that the pharmacists' identities are protected pursuant to Section 546.720 and, as a result, the DOC was not in violation of the Sunshine Law, we need not discuss at length the DOC's sec-

ond point on appeal disputing the court's award of attorney fees. Where there was no violation of the Sunshine Law, awarding attorney's fees was improper. Point two is granted.

We further find that the court erred in concluding that the DOC violated the Sunshine Law when it failed to produce records that came into existence after the date of Bray's November 5, 2013, records request for the DOC's "current inventory" of pentobarbital. The record reflects that the DOC responded to the request and provided records of its current inventory of pentobarbital as of November 5, 2013. The court found the DOC in violation of the Sunshine Law, however, because the DOC did not provide additional records that were in existence at the time the DOC actually produced the records on November 18, 2013. The court found it "irrelevant" that the DOC produced post–November 5, 2013, records in response to a different request which is, apparently, how Bray learned of their existence. Rather than irrelevant, we find that this supports that the DOC did not knowingly and purposefully violate the Sunshine Law because it suggests that, had the DOC been asked for post–November 5, 2013 records, they would have been produced. As Bray did not ask the DOC for these records in her request, we cannot conclude that a knowing and purposeful Sunshine Law violation occurred when the DOC failed to produce these records. Point three is granted.

## Point IV

In its fourth point on appeal, the DOC asserts that the trial court erred in finding that the DOC violated the Sunshine Law by not producing records in the public domain that were previously filed in federal court because the requested records were closed under Section 546.720.

After Breisacher was made aware that certain records in a related federal case could be used to identify the supplier(s) of lethal chemicals on the DOC's execution team, he concluded that he could not provide certain requested records without revealing the identity of those persons. As discussed in point one, the identity of the pharmacists who supply the lethal injection drugs are protected under Section 546.720. Because Breisacher withheld the records at issue knowing that they could be used to identify current or former members of the execution team, he was not in violation of the Sunshine Law. The trial court erred in its finding that the DOC violated the Sunshine Law by not producing certain records, even if they were already in the public domain. Point four is granted.

## Conclusion

We conclude, therefore, that the identities of pharmacists M6 and M7 are protected by Section 546.720 and the trial court erred in ruling that the identities be disclosed. Because the identities are protected by statute, the trial court also erred in finding that the DOC purposefully and knowingly violated the Sunshine Law when it refused to disclose identifying information. Because the DOC did not violate the Sunshine Law, the court erred in awarding attorney fees for Sunshine Law violations. Further, we find that the DOC was under no duty to provide records in its possession after November 5, 2013, and therefore the trial court erred in finding that the DOC knowingly and purposefully violated the Sunshine Law. Lastly, because the identities of the suppliers of lethal injection drugs are protected by statute, the trial court erred in finding that the DOC violated the Sunshine Law by not producing records already in the public

domain. The trial court's ruling is reversed.

All concur.