

# In the Missouri Court of Appeals
## Eastern District

### <u>DIVISION FIVE</u>

| | | |
|---|---|---|
| DMK HOLDINGS, LLC, | ) | No. ED110153 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | |
| | ) | Cause No. 20SL-AC17944 |
| CITY OF BALLWIN, | ) | |
| | ) | Honorable Virginia W. Lay |
| Respondent. | ) | |
| | ) | Filed: June 7, 2022 |

### Introduction

Appellant DMK Holdings, LLC ("DMK") filed a two-count petition against the City of Ballwin ("Ballwin") on November 18, 2020, seeking damages for an inverse condemnation claim in Count I and a declaratory judgment in Count II. The Circuit Court of St. Louis County entered summary judgment for Ballwin on both counts.

On appeal, DMK raises two points: (1) the circuit court erred in granting summary judgment on Count I because the term "professional" used by Ballwin's inspector in his violation notice of DMK's fence does not have the same meaning as the "workmanlike" requirement in Ballwin's ordinance; and (2) the circuit court erred in granting summary judgment on Count II because DMK's solar panels did not require a permit. DMK argues the solar panels were not

connected to the electrical system of the house and were not installed on a "roof" as contemplated in Ballwin's ordinances. We affirm the summary judgment of the circuit court.

## Facts and Procedural Background

On March 23, 2020, a Ballwin building inspector conducted an occupancy inspection on DMK's property at 435 Great Hill Drive. The inspector found that a fence on the property needed to be power sprayed for mold and mildew, repaired to fix broken or rotting pickets, and replaced soon. DMK removed and replaced the fence. On June 11, 2020, the replacement fence failed reinspection. The inspector listed as reasons for the failed inspection "panels poorly secured and work must look professional."

Ballwin has adopted the International Residential Code ("IRC") and the International Property Maintenance Code ("IPMC") as part of its code of ordinances. IPMC 102.5, as adopted by Ballwin, states: "**Workmanship.** Repairs, maintenance, work, alterations or installations that are caused directly or indirectly by the enforcement of this code shall be executed and installed in a *workmanlike* manner and installed in accordance with the manufacturer's instructions." (Emphasis in original).

DMK owned a separate house at 401 Far Hill Drive, where it installed solar panels on the covering of the front porch of the structure. Viewed in the light most favorable to DMK, the covering on which the solar panels were installed consisted of plywood and shingles over the front porch. *See Kroner Invs., LLC v. Dann*, 583 S.W.3d 126, 128 (Mo. App. E.D. 2019) ("We review the record in the light most favorable to the party against whom judgment was sought."). On August 25, 2020, an inspector issued a violation notice to DMK for not having a permit to install the solar panels.

IRC R105.1 requires a permit to "erect, install, enlarge, alter, repair, remove, convert or replace any electrical, gas, mechanical or plumbing system, the installation of which is regulated by this code." IRC R324.4 regulates "[r]ooftop-mounted photovoltaic panel systems installed on or above the roof covering" and refers to IRC R907. IRC R907 similarly regulates "[r]ooftop-mounted photovoltaic panels or modules" and refers back to IRC R324.

On November 18, 2020, DMK filed a petition against Ballwin for claims related to the inspectors' violation notifications. DMK brought an inverse condemnation claim in Count I.[1] It alleged, "There is no requirement anywhere that fences look 'professional' in order to have a permit issued." The petition also included a facial challenge to Ballwin's ordinance, pleading that the term "workmanlike" is unconstitutionally vague in violation of the Fourteenth Amendment to the United States Constitution and Article 1, Section 10 of the Missouri Constitution. In Count II, DMK sought a declaratory judgment that the solar panels at the Far Hill house did not require a permit because "this is a standalone system, [and] no such requirement exists." Similar to Count I, Count II also pleaded that the term "roof" in the ordinance is unconstitutionally vague.

On May 17, 2021, Ballwin moved for summary judgment on both counts pursuant to Rule 74.04(c)(1).[2] In support of its definitions of "workmanlike" and "roof," Ballwin attached the transcript of the deposition of Ballwin's building commissioner. Ballwin explained in its motion, and the building commissioner testified, that the building commissioner is responsible for interpreting Ballwin's code of ordinances. On October 26, 2021, the circuit court entered summary judgment for Ballwin on both counts. DMK appeals the summary judgment.

---

[1] Inverse condemnation is the remedy when private property is taken or damaged without compensation by a public entity with the power of eminent domain. *See State ex rel. City of Blue Springs v. Nixon*, 250 S.W.3d 365, 370-71 (Mo. banc 2008); *Scott Family Props., LP v. Missouri Highways and Transp. Comm'n*, 546 S.W.3d 605, 607-08 (Mo. App. E.D. 2018).
[2] All Rule reference are to the Missouri Supreme Court Rules (2021), unless otherwise indicated.

**Standard of Review**

We review summary judgment *de novo*. *Kroner*, 583 S.W.3d at 128. A circuit court's order granting summary judgment will be affirmed on appeal if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* We review the record in the light most favorable to the non-moving party. *Id.*

**Discussion**

As an initial matter, stringent procedural requirements govern the raising and preservation of constitutional issues. If not raised at the first opportunity in the circuit court, a constitutional claim is waived and cannot be raised on appeal. *K.M.M. v. K.E.W.*, 539 S.W.3d 722, 733-34 (Mo. App. E.D. 2017). DMK's petition, though sparse, may favorably be read to raise both facial and as-applied constitutional challenges to the ordinances. *See Bennett v. St. Louis Cty.*, 542 S.W.3d 392, 397 (Mo. App. E.D. 2017) ("A successful as-applied challenge bars a law's enforcement against a particular plaintiff, whereas a successful facial challenge results in complete invalidation of a law"). On appeal, DMK eschews any facial challenge, and instead challenges the ordinances only as applied in this case. We therefore consider only DMK's as-applied challenges on appeal. *See State ex rel. Dalton v. Missouri Comm'n on Human Rights*, 618 S.W.3d 640, 651 (Mo. App. W.D. 2020) (stating issues not raised on appeal are considered waived).

DMK raises two points on appeal. In its first point, DMK argues the terms "workmanlike," as used in IPMC 102.5, and "professional," as used by the inspector, do not have the same meaning. Therefore, according to DMK, the fence could not fail inspection for not looking "professional." DMK argues in its second point that installation of the solar panels did not require a permit because the panels were not connected to the electrical system of the house, and the covering on which the solar panels were installed is not a "roof" for purposes of Ballwin's ordinances.

4

Municipal ordinances are interpreted using the same rules governing statutory interpretation. *City of St. Peters v. Roeder*, 466 S.W.3d 538, 543 (Mo. banc 2015); *New Life Evangelistic Ctr. v. City of St. Louis*, 564 S.W.3d 665, 685 (Mo. App. E.D. 2018). The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute. *Kehlenbrink v. Dir. of Revenue*, 577 S.W.3d 798, 800 (Mo. banc 2019); *State ex rel. Young v. Wood*, 254 S.W.3d 871, 872 (Mo. banc 2008). Words contained in an ordinance should be given their plain and ordinary meaning. *HHC Med. Grp., P.C. v. City of Creve Coeur Bd. of Adjustment*, 99 S.W.3d 68, 71 (Mo. App. E.D. 2003).

### Point I

DMK's position is that the definitions of "workmanlike" in the ordinance and "professional" in the violation notice are unresolved issues of material fact that could not be decided on summary judgment.[3] DMK insists, "The facts were Ballwin did not know why the fence was not 'professional.' The homeowner did not know why the fence was not 'professional.' No one knew why the fence was not 'professional.'"

DMK's position fundamentally is incorrect. The interpretation of an ordinance is not a question of fact; it is a question of law, which we review *de novo. See City of Aurora v. Spectra Commc'ns Grp., LLC*, 592 S.W.3d 764, 784 (Mo. banc 2019); *City of St. Peters*, 466 S.W.3d at 543; *HHC*, 99 S.W.3d at 71. A question of law is a matter for the independent judgment of the reviewing court. *State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City*, 24 S.W.3d 681,

---

[3] DMK similarly argues on appeal that the disputed fact that the fence was installed in a workmanlike manner could not be resolved on summary judgment. DMK's petition is devoid of any allegation that the fence was installed in a workmanlike manner. Instead, DMK effectively conceded that fact and pleaded only that the ordinance did not require the fence to look "professional" and was unconstitutionally vague. Even DMK acknowledges, "The whole point of the appeal, in fact, is that Ballwin did not follow its own ordinance." Thus, whether the fence was installed in a workmanlike manner is not material to any claim in DMK's petition for purposes of summary judgment. *See* Rule 74.04(c); *Wilson v. Union Pac. R.R. Co.*, 509 S.W.3d 862, 869 (Mo. App. E.D. 2017).

684 (Mo. banc 2000); *HHC*, 99 S.W.3d at 70. We therefore exercise our independent judgment to interpret IPMC 102.5 as adopted by Ballwin.

The ordinance does not define "workmanlike." Absent a definition in the ordinance, courts refer to the plain and ordinary meaning of the ordinance's language. *See City of Aurora*, 592 S.W.3d at 784. The language is clear and unambiguous if its terms are plain and clear to a person of ordinary intelligence. *Kehlenbrink*, 577 S.W.3d at 800 (citing *Wolff Shoe Co. v. Dir. of Revenue*, 425 S.W.3d 118, 122 (Mo. banc 2014)). To determine the plain and ordinary meaning of the ordinance's language, we turn to the dictionary definition of "workmanlike." *See HHC*, 99 S.W.3d at 71 ("When a term is not defined, we refer to the dictionary to find the meaning that the legislature intended."); *see also Fisher v. Waste Mgmt. of Missouri*, 58 S.W.3d 523, 526 (Mo. banc 2001).

Ballwin directs us to Lexico.com, a website developed in part by the Oxford Dictionary, which identifies "workmanlike" and "professional" as synonyms. *See Synonyms of Workmanlike*, Lexico (Oxford), https://lexico.com/synonyms/workmanlike. Similarly, a perusal of the most up-to-date version of Webster's Dictionary identifies "workmanlike" as an antonym of "unprofessional," "unskillful," and "artless," and a synonym of "skillful" and "artful." *Workmanlike*, Merriam-Webster Dictionary (last updated Mar. 21, 2022), https://www.merriam-webster.com/dictionary/workmanlike#synonyms.

We nonetheless turn to Webster's Third New International Dictionary. *See Exotic Motors v. Zurich Am. Ins. Co.*, 597 S.W.3d 767, 772 (Mo. App. E.D. 2020) (collecting "significant precedent and legal scholarship" on the appropriateness of Missouri courts' referencing Webster's Third New International Dictionary); s*ee also AAA Laundry & Linen Supply Co. v. Dir. of Revenue*, 425 S.W.3d 126, 132 (Mo. banc 2014) (identifying Webster's Third New International Dictionary as "the institutional dictionary of choice").

Webster's Third defines "workmanlike" as "worthy of a good workman : well performed," and cross-references to "skillful." *Workmanlike*, Webster's New Int'l Dictionary 2635 (3d ed. 2002). "Skillful" is defined in pertinent part as "possessed of or displaying skill . . . done with trained proficiency," and its synonym is "proficient." *Skillful*, *id.* at 2133. Webster's Third explains that "skilled, for the most part interchangeable with proficient, usu. suggests a proficiency in the technique of an art or profession." *Proficient*, *id.* at 1811. In turn, "professional" is defined in pertinent part as "engaged in one of the learned professions or in an occupation requiring a high level of training and proficiency" and "manifesting fine artistry or workmanship based on sound knowledge and conscientiousness." *Professional*, *id.* at 1811.

In short, the plain and ordinary meaning of "workmanlike" as it appears in IPMC 102.5, titled "**Workmanship**," is "skillful" and "proficient," usually suggesting "proficiency in the technique of an art or profession." Likewise, "professional" means engaged in a learned "profession," requiring a high level of "proficiency," and manifesting fine "artistry or workmanship." Based on these definitions, the plain and ordinary meanings of "workmanlike" and "professional" are indistinguishable on any principled basis. *See Kehlenbrink*, 577 S.W.3d at 800.

Thus, IPMC 102.5, requiring that "[r]epairs, maintenance, work, alterations or installations . . . shall be executed and installed in a *workmanlike* manner," gave notice that the fence must be installed in a "workmanlike" or "professional" manner. Failure to install the fence in a "professional" manner, no less than a "workmanlike" manner, is a violation of the ordinance.

Having exercised our independent judgment to determine as a matter of law that "workmanlike" and "professional" have essentially the same plain and ordinary meaning, we are undeterred by DMK's insistence that no one, including Ballwin's building commissioner, knew what "professional" meant. As we have said, the interpretation of the ordinance is, in the first

7

instance, a question of law for a court's determination. When, as here, the plain language is clear and unambiguous, we need not apply any other rule of construction. *New Life Evangelistic Ctr.*, 564 S.W.3d at 685; *Kehlenbrink*, 577 S.W.3d at 800.

We note nonetheless that DMK mischaracterizes the record. In reality, the building commissioner's interpretation of the ordinance lends additional weight to our interpretation. "Although the interpretation of a city ordinance is a question of law, the interpretation given to the language by the body in charge of its enactment and application is also entitled to great weight." *Williams v. Dep't of Bldg. Dev. Servs. of Springfield*, 192 S.W.3d 545, 547 (Mo. App. S.D. 2006) (citing *HHC*, 99 S.W.3d at 71); *see also Bray v. Lombardi*, 516 S.W.3d 839, 844 (Mo. App. W.D. 2017) ("[T]he interpretation . . . of a statute by an agency charged with its administration is entitled to great weight. If an agency's interpretation of a statute is reasonable and consistent with the language of the statute, it is entitled to considerable deference." (internal quotations omitted)).

Contrary to DMK's characterization, Ballwin's building commissioner did not deny that he knew what "professional" meant. He testified that he did not personally inspect the fence and therefore did not know why the inspector found it not "professional." More importantly, the commissioner testified that inspectors use words like "skilled" or "professional" in place of construction trade jargon like "workmanlike." He concluded, as we have, that "professional" is synonymous with "workmanlike."[4]

---

[4] Ballwin suggests the building commissioner "qualifies as an expert witness with respect to code compliance and inspections due to his training and professional certifications," and lists his master's degrees, 32 International Code Council certifications, and 30 FEMA certifications. While the commissioner's credentials are impressive and the rules of statutory construction dictate that a municipality's authoritative interpretation of its ordinance is given great weight, that does not transform this question of law into one of fact for determination by expert testimony.

8

The definition of "workmanlike" in Ballwin's ordinance is a question of law, which we have determined in Ballwin's favor. There is no genuine issue of material fact and Ballwin is entitled to judgment as a matter of law. Point I is denied.

Point II

For its second and final point, DMK draws our attention to the uncontroverted fact that the solar panels mounted on the front porch structure of the house on Far Hill Drive were not tied into the electrical system of the house. It argues the solar system therefore is not subject to the permitting requirement for electrical and mechanical systems in IRC R105.1.

DMK correctly conceded at oral argument that nothing in the language of IRC R105.1 or any other ordinance limits the permitting requirement to systems tied into the electrical system of the house. Instead, DMK relies on the building commissioner's interpretation that the ordinance applies to "something that would be part of the building" and regulates solar systems "because the solar systems are tied into the electrical systems of the house." DMK ignores the building commissioner's additional testimony that the ordinance also regulates solar systems due to the "load component" implicated by attaching the system to the structure. Setting aside that DMK's solar system was not tied into the electrical system, it undisputedly was mounted on the structure.

Regardless, we have made clear that the interpretation of the ordinance is a legal issue for the court's determination by reference to the plain and ordinary meaning of the language of the ordinance. The ordinance lacks any language restricting the permitting requirement to systems tied into the electrical system or, for that matter, that impact the load component. An interpretation of an ordinance with no basis in the ordinance's text is not entitled to any deference in our analysis. *See Bray*, 516 S.W.3d at 844; *see also Morton v. Missouri Air Conservation Comm'n*, 944 S.W.2d 231, 236-37 (Mo. App. S.D. 1997) ("[W]hen an administrative agency's decision is based on the

9

agency's interpretations of law, the reviewing court must exercise unrestricted, independent judgment and correct erroneous interpretations.").

Because the permitting requirement applies regardless if the solar system was tied into the electrical system, the fact that the solar system was not tied into the electrical system is not an uncontroverted material fact for purposes of summary judgment. *See Wilson v. Union Pac. R.R. Co.*, 509 S.W.3d 862, 869 (Mo. App. E.D. 2017) (stating a fact is "material" for purposes of summary judgment if "it has legal probative force as to a controlling issue in the litigation"). On that basis, Ballwin is entitled to judgment as a matter of law, and DMK was not entitled to a declaratory judgment that the solar panels did not require a permit.

DMK likewise is incorrect that the solar panels did not require a permit because they were not installed on a "roof." IRC R105.1 requires a permit for "rooftop-mounted" solar systems and panels, including those "installed on or above the roof covering," pursuant to IRC R324 and R907.

Because "roof covering" is defined in Ballwin's ordinance, we take that definition first. IRC R202 defines "roof covering" as the "covering applied to the roof deck for weather resistance, fire classification and appearance." The parties do not dispute that the roof covering here consisted of shingles, and the solar panels were installed on or above those shingles.

The ordinances do not define "rooftop," meaning we refer once again to the dictionary definition. Webster's Third cross-references "rooftop" to "roof." *Rooftop*, Webster's New Int'l Dictionary 1971 (3d ed. 2002). The primary definition of "roof" is "the outside cover of a building or structure including the roofing and all the materials and construction necessary to maintain the cover upon its walls or other support." *Roof*, *id.* A "structure" simply is "something constructed or built." *Structure*, *id.* at 2267. Here, we have the outside cover of a structure consisting of a plywood

10

roof deck and shingle roof covering maintained upon the front porch of the house since before the August 25, 2020, inspection.

As relevant to this definition of "roof," DMK does not suggest that this cover lacks any of the materials or construction necessary to maintain it upon its support. Instead, DMK can muster only that this combined plywood roof deck and shingle roof covering is not a "roof" because it lacks a vapor barrier, underlayment, and insulation necessary to protect a building. But DMK labors under a different definition. DMK refers us to the definition of "roof assembly" in IRC R202:

> A system designed to provide weather protection and resistance to design loads. The system consists of a roof covering and roof deck or a single component serving as both the roof covering and the roof deck. A roof assembly includes the roof deck, vapor retarder, substrate or thermal barrier, insulation, vapor retarder [sic], and roof covering.

The operative ordinances, IRC R324 and R907, make no reference to "roof assembly." Still, DMK argues the definition of "roof assembly" in IRC R202 offers guidance as to whether DMK's solar panels were mounted on a "roof" pursuant to IRC R324 and R907. DMK maintains in its appellate brief that a "roof assembly" requires all of the components listed in the definition: "a covering (typically shingles), a deck (typically plywood), and a vapor barrier, underlayment, and insulation."

Ballwin counters that, while a "roof assembly" may include a roof deck, roof covering, and other components, not all of those components are required. Ballwin accurately points out that the word "includes" precedes the list of components in IRC R202, suggesting some of the components may be present but not all of them are essential. *See Short v. S. Union Co.*, 372 S.W.3d 520, 532 (Mo. App. W.D. 2012) (observing the statutory word "include" almost universally is construed by

11

Missouri courts as a term of enlargement, rather than of limitation, and as providing an illustrative, non-exclusive example).

Further, even if a "roof assembly" required all of the components listed in the definition, the issue here is the definition of "roof." According to the plain and ordinary meaning, one may deduce that a "roof" consists of only some components of a "roof assembly," a plywood roof deck and shingle roof covering for instance. *See City of Aurora*, 592 S.W.3d at 783 (presuming each word and clause of a statute is to be given meaning and is not superfluous).

Consistent with this interpretation, the building commissioner testified that the "porch roof covering over the egress to the front door" constitutes a "roof" under the IRC. He stated that the components listed in the ordinance definition of "roof assembly," such as a vapor retarder and insulation, may be included, but are not mandatory, for the covering to constitute a "roof." Given our independent determination that this is a "roof," the commissioner's reasonable and consistent interpretation of the ordinance is entitled to considerable deference. *See Bray*, 516 S.W.3d at 844; *Morton*, 944 S.W.2d at 236-37.

For these reasons, DMK's solar panels were mounted on a "roof," within the plain and ordinary meaning of that term, and required a permit. Therefore, DMK was not entitled to a declaratory judgment that the solar panels did not require a permit, and Ballwin is entitled to judgment as a matter of law.

## Conclusion

For the forgoing reasons, the summary judgment of the circuit court is affirmed.

12

Cristian M. Stevens, J.

Sherri B. Sullivan, C.J., and
Kurt S. Odenwald, J., concur.